# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 22-6009
_____

In re: MACHELE L. GOETZ,

Debtor.

_____

MACHELE L. GOETZ,

*Appellant*

v.

VICTOR F. WEBER, Chapter 7 Trustee,

*Appellee*

_____

Appeal from United States Bankruptcy Court
for the Western District of Missouri

_____

Submitted: April 18, 2023
Filed: June 1, 2023

_____

Before SHODEEN, RIDGWAY, AND HASTINGS, Bankruptcy Judges.

_____

Hastings, Bankruptcy Judge.

Debtor/Appellant Machele L. Goetz appeals the bankruptcy court's[1] order denying Goetz's Motion to Compel Trustee to Abandon Real Property of Debtor. For the following reasons, we affirm.

## BACKGROUND

Goetz petitioned for bankruptcy relief under Chapter 13 of the Bankruptcy Code on August 19, 2020. She valued her residence at $130,000 at the time, and the parties stipulated that she claimed a $15,000 homestead exemption under section 513.475 of the Missouri Revised Statutes. On the petition date, Freedom Mortgage held a $107,460.54 mortgage lien against the property. The parties agreed that there would have been no proceeds in excess of the debt secured by the mortgage lien, exemption and costs of sale had the Trustee liquidated Goetz's residence on the petition date.

Goetz filed her Chapter 13 Plan on the same date she petitioned for bankruptcy relief. The bankruptcy court confirmed her plan on October 16, 2020. Pursuant to the confirmation order and 11 U.S.C. § 1327(b), property of the estate vested in Goetz on confirmation.

The bankruptcy court granted Goetz's motion to convert from a Chapter 13 case to a Chapter 7 case on April 5, 2022. The parties agreed that the value of Goetz's residence increased from $130,000 to $205,000 between the petition date and the conversion date. Between these dates, Freedom Mortgage's mortgage lien decreased to approximately $106,500. The parties stipulated that sale of Goetz's residence would result in more than $62,000 in proceeds after satisfying the mortgage lien and paying the $15,000 homestead exemption and costs of sale.

Prompted by indications that the Trustee planned to sell her residence, Goetz filed a Motion to Compel Trustee to Abandon Real Property of Debtor. The bankruptcy court denied the motion, finding that the increase in equity acquired

---

[1]The Honorable Brian T. Fenimore, United States Bankruptcy Judge for the Western District of Missouri.

between the petition date and the conversion date is property of the Chapter 7 bankruptcy estate and concluding Goetz's residence is worth more than "inconsequential value and benefit to the estate" under 11 U.S.C. § 554. Goetz appealed. With the consent of the parties, Amici Curiae National Association of Consumer Bankruptcy Attorneys and National Consumer Bankruptcy Rights Center filed a brief in support of Appellant, seeking reversal of the bankruptcy court's order.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Ridings v. Casamatta (In re Allen)*, 628 B.R. 641, 642 (B.A.P. 8th Cir. 2021) (citing *In re Zepecki*, 277 F.3d 1041 (8th Cir. 2002)). "Where the bankruptcy court has determined the factual predicates for abandonment are present, we review the court's decision and reverse only in the case of an abuse of discretion." *Kaler v. Nelson (In re Nelson)*, 251 B.R. 857, 859 (B.A.P. 8th Cir. 2000). Under this standard, this Court will not reverse without a definite and firm conviction that the bankruptcy court committed a clear error of judgment in weighing the relevant factors and in reaching its conclusion. *Id.* (citations omitted).

## DISCUSSION

The issues Goetz raises on appeal fall within two primary arguments. First, she argues that the bankruptcy court erred in concluding that postpetition preconversion market appreciation and an increase in equity resulting from payments toward the mortgage lien inure to the estate's benefit upon conversion from a Chapter 13 case to a Chapter 7 case. The Amici Curiae join in this argument. Second, she argues that her residence was removed from the bankruptcy estate when the property vested in her on confirmation of her Chapter 13 plan or when she exempted it, and she claims all equity accruing after these events inures to her benefit.

3

**A.   The bankruptcy court correctly concluded that postpetition preconversion nonexempt equity resulting from market appreciation and payments toward a mortgage lien accrue for the benefit of the bankruptcy estate upon conversion from a Chapter 13 case to a Chapter 7 case.**

Section 541 of the Bankruptcy Code defines property of the bankruptcy estate to include all of a debtor's interests both equitable and legal, except those specifically excluded.  11 U.S.C. § 541.  Estate property includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case," and "[a]ny interest in property that the estate acquires after the commencement of the case."  11 U.S.C. § 541(a)(6) and (7).

Upon conversion from one chapter to another, this definition is adjusted. Section 348 qualifies the scope of bankruptcy estate property by clarifying that "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion[.]"  11 U.S.C. § 348(f)(1)(A).  If a debtor converts a case under Chapter 13 to a case under another chapter, the property the debtor acquired between the petition date and the conversion date is not property of the converted case, unless the debtor sought to convert the case in bad faith.  11 U.S.C. § 348(f)(2).

On the date Goetz petitioned for relief under Chapter 13, her residence became property of the bankruptcy estate.  The record shows no evidence of bad faith.  Goetz remained in possession and control of her residence throughout her Chapter 13 case and on the date the bankruptcy court granted her motion to convert to a case under Chapter 7.  Her residence is property of the converted bankruptcy estate.  The question then becomes whether the increase in nonexempt equity resulting from market appreciation ($75,000) and a reduction in the mortgage lien ($960) is estate property or Goetz's property.

As the bankruptcy court observed, courts are split on the question of whether postpetition preconversion market appreciation or an increase in equity resulting from payments toward a lien inures to a debtor's benefit upon conversion to a Chapter 7 case. Goetz urges this Court to treat the postpetition preconversion increase in the value of her property as a separate interest that she acquired between petition and conversion. This position is supported by some courts, which find that postpetition appreciation in the value of an asset is a separate interest or "new equity" that inures to a debtor's benefit upon conversion to a Chapter 7 case. *See, e.g., In re Nichols*, 319 B.R. 854, 856–57 (Bankr. S.D. Ohio 2004) (finding that postpetition earnings used to "purchase" "new equity" in existing estate assets are not property of the estate).

Applying a slightly different rationale, some courts find that equity in excess of exemptions should be determined as of the petition date and any equity accruing after that date inures to the debtor.[2] These courts look to the legislative history for section 348 and consider policy-based reasons supporting their conclusion that

---

[2]*See, e.g.*, *Kendall v. Lynch (In re Lynch)*, 363 B.R. 101, 106 (B.A.P. 9th Cir. 2007) (finding that equity resulting from debtors' postpetition payments on loans secured by their residence and property appreciation inures to the debtors' benefit upon conversion from Chapter 13 to Chapter 7); *In re Barrera*, 620 B.R. 645, 653 (Bankr. D. Colo. 2020), *aff'd* 2020 WL 5869458 (B.A.P. 10th Cir. 2020) (finding that a proper interpretation of "property" under section 348(f)(1)(A) "is the property *as it existed on the petition date*, with all its attributes including the amount of equity that existed on that date." (emphasis in original)); *Leo v. Burt (In re Burt)*, 2009 WL 2386102, at *5 (Bankr. N.D. Ala. July 31, 2009) ("Section 348(f)(1)(A) establishes the original chapter 13 petition date as the date on which a hypothetical inventory is to be conducted to determine what property will be in the estate of the converted case. This Court is of the opinion that the amount of equity remaining after deducting secured claims encumbering such property should also be determined based on the secured claim outstanding on the petition date." (footnote omitted)).

equity created by a debtor's plan payments or asset appreciation during the course of the Chapter 13 case is not property of the estate.[3]

Similar to the bankruptcy court in this case, other courts find that appreciation is not a distinct asset but rather a characteristic or attribute of property subsumed within a particular asset.[4] If the asset is property of the converted bankruptcy estate, the increase in equity—whether by appreciation or reduction of encumbrances—is also property of the estate, compelling these courts to conclude that postpetition preconversion equity increases inure to the benefit of the estate.[5]

---

[3]*See In re Lynch*, 363 B.R. at 106; *In re Barrera*, 620 B.R. at 653; *In re Burt*, 2009 WL 2386102, at *5; *see also In re Cofer*, 625 B.R. 194, 202 (Bankr. D. Idaho 2021).

[4]*See In re Goetz*, 647 B.R. 412, 416–17 (Bankr. W.D. Mo. 2022); *In re Adams*, 641 B.R. 147, 151 (Bankr. W.D. Mich. 2022) ("The court regards the value of any property as an attribute or incident of the property, not a separate right or interest in the property." (citation omitted); *In re Castleman*, 631 B.R. 914, 919 (Bankr. W.D. Wash. 2021) ("Post-petition appreciation is not treated as a separate asset from pre-petition property and inures to the bankruptcy estate, not the debtor." (citations omitted), *aff'd* 2022 WL 2392058 (W.D. Wash. 2022)); *see also In re Hayes*, No. 113, Case No. 15-20727, slip op. at 9, 14 (Bankr. D. Colo. Mar. 28, 2019) ("Equity is merely a descriptive term for that portion of a debtor's property which represents value in excess of encumbrances. Thus, the Debtors' legal interest in the Property as of the Petition Date was the physical land and buildings comprising the Property.… Because the entirety of the Property is property of the estate, the entirety of the proceeds received from sale of the Property will be property of the estate, including the portion representing an increase in Debtors' equity from appreciation."); *In re Goins*, 539 B.R. 510, 516 (Bankr. E.D. Va. 2015) ("In the Court's view, the cases under Section 541(a)(6) are applicable because the equity attributable to the post-petition appreciation of the property is not separate, after-acquired property, to which we might look to Section 348(f)(1)(A). The equity is inseparable from the real estate, which was always property of the estate under Section 541(a).").

[5]*See In re Adams*, 641 B.R. at 151; *In re Castleman*, 631 B.R. at 919; *In re Hayes*, No. 113, Case No. 15-20727, slip op. at 9, 14; *In re Goins*, 539 B.R. at 516.

As these courts observed, section 348 does not specify whether postpetition preconversion equity resulting from debt payments or appreciation due to market conditions is property of the estate or property of the debtor. It simply refers to "property of the estate" and provides that "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A). When this statute is read in conjunction with section 541 and case law interpreting it, "property of the estate" includes all debtor's interests, both legal and equitable, with some exceptions not applicable here. *See* 11 U.S.C. § 541 (defining property of the estate). As we have previously observed, "Nothing in Section 541 suggests that the estate's interest is anything less than the entire asset, including any changes in its value which might occur after the date of filing." *Potter v. Drewes (In re Potter)*, 228 B.R. 422, 424 (B.A.P. 8th Cir. 1999) (relying on section 541 to conclude that postpetition preconversion equity increases accrue to the benefit of the bankruptcy estate).[6]

Goetz and the Amici Curiae insist that section 348(f) is ambiguous. They urge the Court to consider legislative history, which they maintain supports their argument that postpetition preconversion equity increases should benefit debtors. We detect no ambiguity in sections 348(f) and 541. Even if we were to conclude that section 348(f)(1)(A) is ambiguous, the legislative history of this statute does not mandate a different outcome.[7] Section 348(f)(1)(A), as enacted, accomplished the

---

[6]This conclusion is consistent with case law interpreting section 541 in the context of a Chapter 7 case that has not been converted. In this context, courts consistently find that an increase in nonexempt equity inures to the benefit of the bankruptcy estate. *See Coslow v. Reisz*, 811 F. App'x 980, 984 (6th Cir. 2020); *Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1321 (9th Cir. 1992); *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (9th Cir. 1991); *In re Lents*, 644 B.R. 479, 489 (Bankr. D.S.C. 2022); *In re Ostendorf*, 2011 WL 1060992, at *1 (Bankr. D. Neb. Mar. 23, 2011); *In re Moyer*, 421 B.R. 587, 594 (Bankr. S.D. Ga. 2007); *In re Shipman*, 344 B.R. 493, 495 (Bankr. N.D. W. Va. 2006).

[7]The House Judiciary Committee's report on the Bankruptcy Reform Act of 1994 indicates that section 348(f)(1)(A) was enacted to:

purpose of the legislation as articulated in the legislative history: it eliminated a "serious disincentive to [C]hapter 13 filings" by adopting the reasoning of *In re*

> clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.
>
> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.
>
> This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

H.R. Rep. No. 103–835, at 57 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3366.

*Bobroff* and specifying that property a debtor acquires postpetition is not property of the converted bankruptcy estate. H.R. Rep. No. 103–835, at 57 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3366; *see* 11 U.S.C. § 348(f)(1)(A); *Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797 (3d Cir. 1985). Section 348(f) does not specify that debtors are entitled to retain equity resulting from payments during the Chapter 13 case—the scenario referenced in the House Report. Likewise, the statute does not address whether debtors are entitled to retain postpetition preconversion equity resulting from market appreciation, asset improvements or repairs. To accept Goetz's argument, one must read this clarification into the statute.

The plain meaning of a statute is conclusive, except in the "'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Waugh v. Internal Revenue Serv. (In re Waugh)*, 109 F.3d 489, 493 (8th Cir. 1997) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). "'In such cases, the intention of the drafters, rather than the strict language, controls.'" *Bank of Mo. v. Fam. Pharmacy (In re Fam. Pharmacy)*, 614 B.R. 58, 66 (B.A.P. 8th Cir. 2020) (quoting *Ron Pair*, 489 U.S. at 242–43). Section 348(f) is clear and consistent with legislative intent. *See* 11 U.S.C. 348(f); *see also In re Castleman*, 631 B.R. 914, 918–20 (Bankr. W.D. Wash. 2021); *In re John*, 352 B.R. 895, 903–04 (Bankr. N.D. Fla. 2006). Congress's failure to address the example included in the legislative history does not mean this omission was inadvertent. Recognizing that statutes are often the result of compromise, we decline to accept Goetz's invitation to assume that Congress intended that debtors may retain postpetition preconversion market appreciation and equity resulting from debt payments without language articulating this intent.

We also reject Goetz's claim that interpreting section 348(f) to allow the bankruptcy estate to benefit from postpetition preconversion estate property value increases treats Goetz as though she converted her case in bad faith. To the extent Goetz acquired new property after she petitioned for bankruptcy relief under Chapter 13, this property remains her property. In enacting section 348(f), Congress distinguished between property of the estate at the time of conversion that remains

9

in the possession or control of the debtor from property acquired after petition. The former is property of the estate (Goetz's residence), the latter is property of debtor unless she converted in bad faith. The bad faith provision neither hinders nor advances Goetz's claim to the equity increase in her residence. It simply does not apply. Accordingly, the bankruptcy court correctly concluded that postpetition preconversion nonexempt equity accrues for the benefit of the converted Chapter 7 estate.

**B.      Goetz's claim that she benefits from the increase in equity in her residence because her residence was removed from the bankruptcy estate is also rejected.**

Goetz claims she is entitled to the equity increase in her residence because the residence was removed from the bankruptcy estate when she exempted it. Alternatively, Goetz argues that her residence and any nonexempt equity in it vested "in the debtor" upon confirmation under 11 U.S.C. § 1327(b) and the confirmation order, removing it from the converted bankruptcy estate. She claims the appreciation in her residence occurred after the property vested and she is entitled to retain this value. Although the bankruptcy court did not specifically address these claims, it implicitly rejected them when it declared, "There can be no question about whether the residence is property of the converted chapter 7 estate—it is. And because the post-petition equity in Goetz's residence is inseparable from the residence itself, the post-petition equity is also property of the chapter 7 estate." *In re Goetz*, 647 B.R. 412, 418 (Bankr. W.D. Mo. 2022). Neither party highlighted the bankruptcy court's failure to specifically address these arguments or requested remand due to this omission. However, Goetz devoted many pages of her brief to them. Because these arguments raise questions of law, we exercise our discretion to address them in the first instance.[8]

---

[8]When a trial court neglects to address an issue, but the facts are undisputed, the parties exclusively argue questions of law, and the review is *de novo*, appellate courts may exercise discretion to decide legal issues in the first instance. *See Zaldivar Anzardo v. U.S. Att'y Gen.*, 835 F. App'x 422, 428 (11th Cir. 2020); *Bokenfohr v. Gladen*, 828 F. App'x 485, 486, n.3 (9th Cir. 2020); *Kistner v. L. Off.*

Goetz's reliance on section 1327 and the confirmation order to support her claim that her residence is no longer property of the bankruptcy estate is misplaced. While it is true that property vested in Goetz when the bankruptcy court confirmed her Chapter 13 plan, neither section 1327(b) nor the relevant provision of the confirmation order applies in the converted Chapter 7 case. *See* 11 U.S.C. § 103(j) ("Chapter 13 of this title applies only in a case under such chapter."); *Harris v. Viegelahn*, 575 U.S. 510, 520 (2015) ("When a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway."). Rather, section 348 governs the scope of estate property upon conversion. *See* 11 U.S.C. § 348; *In re Cofer*, 625 B.R. 194, 198 (Bankr. D. Idaho 2021) ("In sum, sound statutory interpretation and the relevant authorities support the conclusion that the plain language of § 348(f)(1)(A) revests in the estate of the converted case all property of the estate of the original filing still in the possession or control of Debtor despite the provisions of § 1327."). Because Goetz's interpretation ignores section 348(f)(A)(1), it is rejected.

Her assertion that she removed her residence from the bankruptcy estate when she claimed the homestead exemption is likewise rejected. Citing to stipulated facts, Goetz maintains there was no value in her residence available to the bankruptcy estate on the date she petitioned for bankruptcy relief. She asserts that any equity in the residence was "removed" or "withdrawn" from the estate when she claimed her homestead exempt and no interested party objected to the exemption. Citing cases ruling that exempt property is not property of the estate, Goetz insists any increase in equity between the petition date and the conversion date inures to her benefit because the residence is no longer property of the estate.

---

*of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008); *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 544 n.* (4th Cir. 2005); *Savard v. Rhode Island*, 320 F.3d 34, 38 (1st Cir. 2003), *on reh'g en banc*, 338 F.3d 23 (1st Cir. 2003); *Roberts v. Van Buren Pub. Sch.*, 773 F.2d 949, 955 (8th Cir. 1985); s*ee also Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.,* 946 F.3d 1100, 1112 (9th Cir. 2020).

Goetz's eligibility for the Missouri homestead exemption is determined as of the date of the Chapter 13 petition. *See Alexander v. Jensen-Carter (In re Alexander)*, 236 F.3d 431, 433 (8th Cir. 2001). On the petition date, Goetz valued her residence at $130,000. After deducting the $15,000 homestead exemption and the debt secured by a mortgage lien, there remained $7,539.46 in equity. On the conversion date, the value of the house increased to $205,000 and the debt against the home decreased, leaving approximately $83,000 in equity. We are not convinced that the sum of nonexempt equity in Goetz's residence on the petition date governs whether it is property of the estate or determines the value of the estate's interest in the property at the time she sought to compel abandonment of the property under section 554.

Section 513.475 of the Missouri Revised Statutes entitles Goetz to exempt a house, appurtenances and land "not exceeding the value of fifteen thousand dollars" that is used as a homestead. *See* Mo. Rev. Stat. § 513.475(1). The parties stipulated that Goetz claimed and was entitled to a $15,000 homestead exemption. To the extent the equity in this property is more than $15,000, it is not exempt. Stated another way, section 513.475 entitles Goetz to "remove" from the estate only a portion of the value of the homestead—equity in the maximum sum of $15,000. It is not an in-kind exemption; it does not entitle Goetz to remove the dwelling house and appurtenances, and the land in its entirety. As explained by the court in *In re Adams*, "In effect, most exemptions which entitle a debtor to a representative value, measured by former ownership of particular property, operate as a charge against that property, much like a lien to secure payment of the specified amount, rather than title to the thing itself." 641 B.R. 147, 153 (Bankr. W.D. Mich. 2022); *see generally Schwab v. Reilly*, 560 U.S. 770, 783–84, 794–95 (2010) (finding that under sections 522(5) and (6), the debtor may claim his aggregate interest in the business equipment he sought to exempt, not the equipment *per se* and explaining that the estate may preserve its right to retain any value in the equipment beyond the value of the exempt interest). Accordingly, Goetz's homestead exemption did not remove the residence from the bankruptcy estate. Further, Goetz's $15,000 homestead exemption was consistent with the Missouri statutory limit and, therefore, facially valid. The

12

Trustee's failure to object to the exemption claim does not preclude him from pursuing the nonexempt equity. *See Schwab*, 560 U.S. at 774 (noting that because the exemption was facially valid, the Trustee was not compelled to object "to preserve the estate's ability to recover value in the asset beyond the dollar value the debtor expressly declared exempt.").

Importantly, this dispute arises in the context of a motion to compel abandonment. The use of present tense in the text of section 554 suggests courts must consider the current value or benefits of the property sought to be abandoned. *See* 11 U.S.C. § 554(b) ("On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that *is* burdensome to the estate or that *is* of inconsequential value and benefit to the estate.") (emphasis added); *see also Coslow v. Reisz*, 811 F. App'x 980, 984 (6th Cir. 2020); *In re Adams*, 641 B.R. at 152–53. Also, section 554 "says nothing about looking to the 'commencement of the case' to determine value" and "every court confronted with an analogous abandonment dispute has looked to the equity contained in the debtor's property at the time the abandonment motion came before it, rather than at some static moment in the past." *Coslow*, 811 F. App'x at 984 (citation omitted). Consequently, Goetz's claim that her homestead exemption claim limited the estate's interest in her residence to its value on the petition date is not persuasive.

## CONCLUSION

For the reasons stated, the bankruptcy court correctly concluded that the postpetition preconversion equity increase in Goetz's residence is property of the bankruptcy estate. The parties stipulated that sale of Goetz's residence would result in more than $62,000 in proceeds after satisfying the mortgage lien and paying the $15,000 homestead exemption and costs of sale. The bankruptcy court's determination that this sum is "of more than inconsequential value and benefit to the estate" was not an abuse of discretion. We affirm the bankruptcy court's decision to deny Goetz's Motion to Compel Trustee to Abandon Real Property of Debtor.

_____

13